UNITED STATES DISTRICT COURT:
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                :

STELLA McLEOD,             :

                :

            Plaintiff,    :

                :

       -v-            :

                :

GENERAL VISION SERVICES, INC., et al.,  :

                :

          Defendants.  :

                :

-------------------------------------------------------X

13-CV-6824 (VSB)

**OPINION & ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___8/6/2018___

Appearances:

Sandra D. Parker
Law Office of Sandra D. Parker
New York, New York
*Counsel for Plaintiff*

Chad T. Harlan
Solomon & Tanenbaum, P.C.
White Plains, New York

William V. Coleman
S. Tito Sinha, P.C.
Kew Gardens, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Stella McLeod brings this action alleging employment discrimination,

retaliation, and a hostile work environment in violation of Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act of

1967 (the "ADEA"), 29 U.S.C. § 621 *et seq.*, 42 U.S.C § 1981, the New York State Human

Rights Law (the "NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human

Rights Law (the "NYCHRL"), N.Y.C. Administrative Code § 8-101 *et seq.* Defendants

Platinum Optical Corp. ("Platinum"), Elegant Eyes Optical Corp. ("Elegant Eyes"), Styleyes

Optical Corp. ("Styleyes"), JLS Optical Corp. ("JLS"), Elaina Zavilensky, and Walter

Zavilensky (collectively, "Defendants") move for summary judgment as to the entirety of

Plaintiff's claims.  For the reasons that follow, Defendants' motion for summary judgment is

GRANTED IN PART and DENIED IN PART.

## I.    <u>Background</u>[1]

Elaina and Walter Zavilensky own and operate multiple corporations, which in turn

operate retail franchise optical stores located in the New York area.  (Pl.'s 56.1 ¶ 1.)[2]  Plaintiff

worked at certain of these stores, including at stores owned by Elegant Eyes, Styleyes, Platinum,

and JLS.  (*Id.* ¶¶ 7, 15, 20, 26, 29, 37, 39.)  Plaintiff's method of pay, position, and title while

working at these stores is disputed in various ways.  For example, it is disputed whether Plaintiff

was initially employed at Elegant Eyes as a manager with a weekly salary of $900, or as a sales

associate paid approximately $22.50 per hour.  (*See id.* ¶¶ 7–8.)  Although it appears undisputed

that Plaintiff later worked as a sales associate at the other stores, a dispute remains as to all but

her last employment period at Platinum regarding whether Plaintiff was paid a weekly salary or

on a per hour basis.  (*See id.* ¶¶ 16–17, 21–22, 29, 32.)  Plaintiff's pay stubs seem to favor the

former conclusion, as they clearly include a row indicating a salary of $900, whereas the other

employees' pay stubs only include payment by the hour.  (*See* Coleman Aff. Exs. M, N, O, P.)[3]

However, some of Plaintiff's pay stubs also include a column for "quantity" of hours which,

when divided from the salary total, equal $22.50 per hour.  (*See id.*)  In any event, the sales

---

[1] The following facts are undisputed or construed in a light most favorable to Plaintiff, unless otherwise noted.

[2] "Pl.'s 56.1" refers to Plaintiff's Rule 56.1 Statement of Dispute[d] Issues of Fact Submitted in Response to the Rule 56.1 Statement of Defendants.  (Doc. 146.)  Plaintiff's response lists and responds to Defendants' statements of undisputed material fact.

[3] "Coleman Aff." refers to the Affidavit of William V. Coleman in support of Defendants' motion for summary judgment.  (Doc. 122.)

associates at each of these stores were paid between $8.50 and $17 per hour.[4]  (*See* Pl.'s 56.1 ¶¶ 9, 18, 23, 33.)  In addition, after Plaintiff's transfer to Platinum—the last location at which Plaintiff worked related to this case—Plaintiff worked as a sales associate for $15 or $16 per hour.  (*See id.* ¶¶ 37–40; Coleman Aff. Ex. S.)  The other sales associates at Platinum during that period of time were paid between $11 and $15 per hour.  (Pl.'s 56.1 ¶ 41.)

The precise details concerning Plaintiff's employment at each of these stores, as well as the reasons for her transfers and ultimate termination, are subject to a certain amount of dispute. Plaintiff began her employment with the corporations owned by the Zavilenskys on or about February 11, 2008 at Elegant Eyes, where she was employed until approximately April 30, 2010. (*Id.* ¶ 7.)  The store was sold on April 30, 2010, at which point Plaintiff was employed at Styleyes.  (*Id.* ¶¶ 12, 15–16.)  Plaintiff contends that her transfer to Styleyes was meant to be temporary while the Zavilenskys completed the purchase of another store at which Plaintiff was meant to be manager.  (*Id.* ¶¶ 13, 15; Pl.'s Decl. ¶¶ 55–56.)[5]  While at Styleyes, Defendants state that issues developed between Plaintiff and other employees as well as customers, although Plaintiff denies this and claims instead that Stanley Roth, the store manager at Styleyes, called her "old and slow," made her perform his managerial duties, and ultimately forced her transfer. (Pl.'s 56.1 ¶ 20; Coleman Aff. Ex. C, at 402; Pl.'s Decl. ¶¶ 21, 59–60, 62–63; Roth NYSDHR Aff. ¶¶ 3, 4.)[6]  In any event, Plaintiff worked at Styleyes until approximately May 24, 2010, when she became employed at Platinum.  (Pl.'s 56.1 ¶¶ 20–21.)

---

[4] Although Plaintiff denies the paragraph of Defendants' 56.1 statement where these facts are recited, she does not appear to deny the actual amounts paid, but rather who or what entity was responsible for paying the employees.

[5] "Pl.'s Decl." refers to the Declaration of Plaintiff Stella McLeod in Opposition to Defendants' Motion for Summary Judgment.  (Doc. 140.)

[6] "Roth NYSDHR Aff." refers to the affidavit of Stan Roth submitted in connection with the New York State Division of Human Rights (the "NYSDHR") proceeding, attached as Exhibit B to the Coleman Aff.  (Doc. 122-2.)

Plaintiff moved from Platinum to JLS on approximately August 15, 2010, for reasons that are again disputed. At JLS, she worked until approximately October 3, 2010. (*Id.* ¶¶ 21, 29.) While Defendants state that Plaintiff moved because Platinum could not support her salary, Plaintiff contends that she was directed to leave Platinum because Platinum allegedly was going to be sold. (*Id.* ¶¶ 25–26; Zavilensky Aff. ¶¶ 22–23; Pl.'s Decl. ¶¶ 23, 67.)[7] While at JLS, Plaintiff alleged that another employee, Deon Glynn, assaulted her. (Pl.'s 56.1 ¶ 30.) Although Plaintiff claims that Defendants did not conduct a proper investigation, Plaintiff does not deny that an investigation was conducted and that upon investigating the allegations, Defendants found her allegations to be false. (*Id.* ¶ 31.) Plaintiff also filed a report with the police. (*Id.* ¶ 35.) Not surprisingly, the facts surrounding the alleged assault are hotly disputed, with Plaintiff claiming that Glynn hit her, called her an "old ant," and told her to retire, and Defendants stating simply that this never happened. (*Compare* Pl.'s Decl. ¶¶ 24, 27, 69, 77; McLeod Dep. 176:2-24, *with* Glynn Aff. ¶¶ 5–6; Zavilensky Aff. ¶ 23.)[8] It is also disputed whether any JLS employees generally made comments about age and race to Plaintiff. (*Compare* Glynn Aff. ¶¶ 7–9; Petlyar NYSDHR Aff. ¶ 5, *with* Coleman Aff. Ex. C, at 405.)[9]

After Plaintiff complained and filed a police report concerning the alleged assault, Plaintiff was moved back to Platinum. (Pl.'s 56.1 ¶ 35.) Defendants allege that the transfer was because of Plaintiff's conflicts with her co-workers, while Plaintiff maintains that her transfer

---

[7] "Zavilensky Aff." refers to the Affidavit of Elaina Zavilensky in support of Defendants' motion for summary judgment. (Doc. 119.)

[8] "McLeod Dep." refers to the January 12, 2016 deposition of Stella McLeod, attached as Exhibit 27 to the Declaration of Sandra D. Parker in Opposition to Defendants' Motion for Summary Judgment ("Parker Decl.," Doc. 143). (Doc. 143-14.) "Glynn Aff." refers to the Affidavit of Deon Glynn submitted in support of Defendants' motion for summary judgment. (Doc. 121.)

[9] "Petlyar NYSDHR Aff." refers to the Affidavit of Sofia Petlyar submitted in connection with the NYSDHR proceeding, attached as Exhibit B to the Coleman Aff. (Doc. 122-2.)

was connected to her complaints. (*Id.*) With respect to her time at Platinum, Plaintiff lists numerous specific instances where Albert Pleshtyev, the store manager, made comments related to Plaintiff's age and race. (*See* Pl.'s Decl. ¶¶ 90–92, 94–95, 99–102.) Defendants, on the other hand, submit an affidavit from the district manager, Renata Luyblinsky, stating that she has no knowledge of any age- or race-related comments being made. (Luyblinsky Aff. ¶ 5.)[10]

Additionally, for approximately one month in March 2012, Plaintiff was not covered by health insurance. (*See* Pl.'s 56.1 ¶¶ 43–45.) Plaintiff did not suffer any damages as a result of the one-month lapse. (*Id.* ¶ 47.) Finally, before Plaintiff's termination, Luyblinsky initiated a conversation with Plaintiff about Plaintiff becoming a manager. (*Id.* ¶¶ 48–49.) There is some dispute with respect to whether Defendants offered and Plaintiff refused the position, or whether the conversation was meant to continue. (*See id.*; Pl.'s Decl. ¶ 81.) However, some of Plaintiff's submitted materials do, in fact, seem to indicate that she was offered the position. (Pl.'s Decl. ¶ 103; Pl.'s Decl. Ex. 14, at 35 (journal entry noting "I asked Renata about Ins. She asked me to manage the store. I declined. I told her because of previous theft.").) A short while later, on May 1, 2012, Plaintiff's employment was terminated. (Pl.'s 56.1 ¶¶ 48–52.) Defendants assert that the decision to terminate Plaintiff's employment, along with other sales associates, was necessitated by the unprofitability of the Platinum store. (*Id.* ¶¶ 51–52.) The Platinum store was given back to the franchisor in November 2012. (*Id.* ¶ 53; Defs.' Mem. 9.)[11]

Plaintiff filed her complaint with the NYSDHR on September 15, 2011. (Pl.'s 56.1 ¶ 54.) The NYSDHR issued its order and determination dismissing the complaint on March 13, 2012. (*Id.* ¶ 58.) Plaintiff also filed a charge with the Equal Employment Opportunity Commission

---

[10] "Luyblinsky Aff." refers to the Affidavit of Renata Luyblinsky, submitted in support of Defendants' motion for summary judgment. (Doc. 120.)

[11] "Defs.' Mem." refers to the Brief of Defendants in Support of Motion for Summary Judgment. (Doc. 123.)

(the "EEOC") on June 28, 2012, and received the EEOC's notice of right to sue on June 25, 2013. (*Id.* ¶¶ 59, 63.)

## II.    Procedural History

Plaintiff commenced this action by filing a complaint on September 26, 2013. (Doc. 1.) Plaintiff filed an amended complaint on May 29, 2014, (Doc. 30), and, after briefing on Defendants' motion to dismiss was complete, Judge Cathy Seibel, to whom this case was previously assigned, issued an oral ruling denying Defendants' motion and transferred the case to Judge Shira Scheindlin, (*see* Dkt. Entry Dec. 15, 2014).

On April 5, 2016, Plaintiff filed a second amended complaint, (Doc. 108), and on April 12, 2016, the case was reassigned to my docket, (Dkt. Entry Apr. 12, 2016). Defendants thereafter filed their motion for summary judgment on June 10, 2016, (Docs. 115, 119–23), Plaintiff filed her opposition on August 29, 2016, (Docs. 140, 142–43, 146),[12] and Defendants filed their reply on September 29, 2016, (Doc. 147).

## III.    Legal Standard

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see* Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

---

[12] Because of filing errors, Plaintiff's papers were filed on different dates.

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256 (internal quotation marks omitted), and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Additionally, in considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation and internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d

Cir. 2002).

## IV. Discussion

### A. *Election of Remedies*

Defendants argue that Plaintiff's NYSHRL and NYCHRL claims are barred by the election-of-remedies doctrine, given Plaintiff's decision to bring her claims before the NYSDHR and its March 13, 2012 determination and order ruling that Plaintiff's allegations were insufficiently supported. (Defs.' Mem. 13–15.) Plaintiff argues that (1) the election of remedies is an affirmative defense that should have been asserted in Defendants' answers to the First and Second Amended Complaints, and (2) the election-of-remedies doctrine was not meant to be used by employer defendants as a shield after an employer obtained a favorable ruling from the NYSDHR. (Pl.'s Opp. 15–16.)[13]

The election-of-remedies provisions of the NYSHRL and NYCHRL raise an issue of subject matter jurisdiction. *See Moodie v. Fed. Reserve Bank of N.Y.*, 58 F.3d 879, 881–82 (2d Cir. 1995). Under the NYSHRL, "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . and such other remedies as may be appropriate . . . unless such person had filed a complaint hereunder or with any local commission on human rights." N.Y. Exec. Law § 297(9). The election provision contained in the NYCHRL includes virtually the same language. *See* N.Y.C. Admin. Code § 8-502(a)–(b); *see also York v. Ass'n of Bar of N.Y.*, 286 F.3d 122, 127 (2d Cir. 2002) ("[T]he language of the CHRL is nearly identical to that of § 297(9), and discussion of the latter applies equally to the former." (internal quotation marks omitted)).

---

[13] "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment. (Doc. 142.)

Applying these provisions, once NYSHRL and NYCHRL claims are "brought before the NYSDHR, [they] may not be brought again as a plenary action in another court." *York*, 286 F.3d at 127.

Excluding the allegations from the time period after Plaintiff filed her NYSDHR complaint, Plaintiff's claims here are based on precisely the same incidents as those alleged before the NYSDHR, including but not limited to the tension with Ms. Glynn at JLS, the comments that she was "too old," and the comments that she was slow, (*compare* Coleman Decl. Ex. A, *with* Doc. 108). As a result, Plaintiff's NYSHRL and NYCHRL claims based upon actions occurring before September 15, 2011 are barred. *See Williams v. Skyline Auto. Inc.*, No. 11 Civ. 8318(KBF), 2012 WL 1965334, at *3 (S.D.N.Y. May 24, 2012) ("If substantially the same facts are involved, then the doctrine of election of remedies will bar any subsequent court proceedings. The facts need not be perfectly identical, and merely adding some additional facts and/or re-labeling the claim will not prevent the application of the doctrine." (quoting *Benjamin v. N.Y.C Dep't of Health*, No. 102211/06, 2007 WL 3226958, at *5 (N.Y. Sup. Ct. Oct. 23, 2007))). However, Plaintiff's decision to pursue relief before the NYSDHR does not bar any claims based on actions that arose after the filing of the NYSDHR complaint. *See Fleury v. N.Y.C. Transit*, 160 F. App'x 34, 37 (2d Cir. 2005) (summary order) (vacating order dismissing claims arising out of alleged discriminatory events that transpired after plaintiff brought the NYSDHR complaint).

### B. *Timeliness of Plaintiff's Claims*

Defendants further offer various arguments supporting the alleged untimeliness of Plaintiff's claims. At least two of these arguments can be swiftly dispensed. First, with regard to Defendants' claim that Plaintiff did not file her complaint within the required 90-day period after

receiving the EEOC's notice of right to sue, (Defs.' Mem. 12–13)—as Plaintiff's opposition points out and Defendants do not refute—the Plaintiff did not receive the EEOC's notice until June 29, 2013, (*see* Pl.'s Decl. ¶ 114), rendering her September 26, 2013 complaint timely. *See Parker v. Mack*, 460 F. App'x 62, 62–63 (2d Cir. 2012) (summary order) (citing 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e)). Second, Defendants mistakenly note that Plaintiff's § 1981 claims are governed by a three-year statute of limitations, (Defs.' Mem. 10, 12), when § 1981 claims are subject to a four-year statute of limitations period, *see Bermudez v. City of New York*, 783 F. Supp. 2d 560, 573–74 (S.D.N.Y. 2011).

The remaining points raised by Defendants with respect to timeliness are that (1) Plaintiff's Title VII and ADEA claims based on actions that occurred prior to September 2, 2011 are time-barred because they occurred more than 300 days prior to Plaintiff's June 28, 2012 filing of the EEOC charge, and (2) Plaintiff's § 1981 claims based on conduct occurring before September 26, 2009 are barred by the four-year statute of limitations period. (*See* Defs.' Mem. 10, 12.)[14]

Given the relevant limitations periods, the claims falling outside of those periods are only timely if the continuing violation doctrine applies. (*See* Pl.'s Opp. 14.) *See Bermudez*, 783 F. Supp. 2d at 574; *Barounis v. N.Y.C Police Dep't*, No. 10 Civ. 2631(SAS), 2012 WL 6194190, at *8 (S.D.N.Y. Dec. 12, 2012). Under the continuing violation doctrine, "if a plaintiff has experienced a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Bermudez*, 783 F. Supp. 2d at 574 (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir.

---

[14] Defendants also argue that Plaintiff's NYSHRL and NYCHRL claims based on actions occurring before September 26, 2010 are barred by the three-year statute of limitations periods. Because I find that those claims are barred by the election-of-remedies doctrine, I need not address whether the limitations periods also bar the same claims.

2001)).  However, "a series of discrete but related acts of discrimination—do not warrant application of the continuing violations doctrine."  *Milani v. Int'l Bus. Machs. Corp., Inc.*, 322 F. Supp. 2d 434, 452 (S.D.N.Y. 2004).  Furthermore, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  Rather, "each discrete discriminatory act starts a new clock for filing charges alleging that act," although a plaintiff is not automatically barred "from using the prior acts as background evidence in support of a timely claim."  *Morgan*, 536 U.S. at 113.  On the other hand, "[h]ostile work environment claims are different in kind from discrete acts," as "[t]heir very nature involves repeated conduct."  *Id.* at 115.  As such, "a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."  *Id.* at 122.

"As a general matter, the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances."  *Trinidad v. N.Y.C Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) (internal quotation marks omitted).  Here, Plaintiff has not identified any facts, disputed or not, that suggest that the alleged discriminatory and retaliatory acts occurring outside of the limitations period were part of a broader policy of discrimination or retaliation.  As a result, Defendants' motion for summary judgment is granted as to Plaintiff's Title VII and ADEA claims based on discriminatory and retaliatory actions occurring prior to September 2, 2011 and as to Plaintiff's § 1981 claims based on discriminatory and retaliatory actions occurring prior to September 26, 2009.

However, with respect to Plaintiff's hostile work environment claims, Plaintiff cites to

events supporting her hostile work environment claim that are within each respective limitations period. (*See, e.g.*, Pl.'s Decl. ¶¶ 90–92, 94–95, 99–102.) As a result, Plaintiff's hostile work environment claims are not time-barred.

## C. *Plaintiff's Claims*

Plaintiff brings claims for discrimination on the basis of race in violation of Title VII, § 1981, the NYSHRL, and the NYCHRL, and on the basis of age in violation of the ADEA, the NYSHRL, and the NYCHRL that survive Defendants' election-of-remedies and statute-of-limitations challenges. (*See* Doc. 108 ¶ 1.) Plaintiff further brings claims for retaliation and a hostile work environment in violation of each of these statutes. (*Id.* ¶ 2.) For the reasons that follow, (1) summary judgment is granted as to Plaintiff's discrimination claims brought under federal law and the NYSHRL, but denied as to Plaintiff's discrimination claims brought under the NYCHRL; (2) summary judgment is granted as to Plaintiff's retaliation claims; and (3) summary judgment is denied as to Plaintiff's federal, NYSHRL, and NYCHRL hostile work environment claims.

### 1. Plaintiff's Discrimination Claims

Plaintiff's discrimination claims are governed by the burden-shifting scheme laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *Simmons v. Akin Gump Strauss Hauer & Feld, LLP*, 508 F. App'x 10, 12 (2d Cir. 2013) (summary order); *Jimenez v. City of New York*, 605 F. Supp. 2d 485, 497 (S.D.N.Y. 2009). "Under that framework, a plaintiff bears the burden of establishing a prima facie case of discrimination by showing (1) she belongs to a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Joye v. PSCH, Inc.*, No. 14cv3809 (DLC), 2016

WL 6952252, at *6 (S.D.N.Y. Nov. 28, 2016) (citing *Tolbert v. Smith*, 790 F.3d 427, 435 (2d Cir. 2015)). If the employee demonstrates that a prima facie case exists, "the burden shifts to the employer to give a legitimate, non-discriminatory reason for its actions." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014). If the employer then satisfies its burden, the burden returns to the plaintiff to show that the non-discriminatory reason given by the employer is pretext. *See id.*

With respect to claims brought under the ADEA as well as age discrimination claims brought under the NYSHRL, a plaintiff cannot succeed by simply showing that the adverse action was motivated at least in part by age discrimination; rather, at this last stage of the *McDonnell Douglas* formulation, a plaintiff "'must prove, by a preponderance of the evidence, that age was the but-for cause of the challenged adverse employment action' and not just a contributing or motivating factor." *Gorzynski v JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)); *see also Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 33 (2d Cir. 2016) (summary order) ("As the legal standards governing age discrimination claims under the NYSHRL have long been considered to be identical to those under the ADEA, this Court has assumed that "but-for" causation is required to support a claim under the NYSHRL."). This means that the adverse employment action would not have occurred absent the plaintiff's age. *See Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (per curiam).

Claims brought under the NYCHRL must be independently analyzed and are governed by a more permissive standard. "To establish a . . . discrimination claim under the NYCHRL, the plaintiff need only demonstrate 'by a preponderance of the evidence that she has been treated less well than other employees because of her [age or race].'" *Mihalik v. Credit Agricole*

*Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39 (1st Dep't 2009)).  Claims brought under the NYCHRL are construed "broadly in favor of discrimination plaintiffs, to the extent such a construction is reasonably possible."  *Id.* at 109 (internal quotation marks omitted).  Summary judgment "can be an appropriate mechanism for resolving NYCHRL claims," *id.* at 111, but a defendant is entitled to summary judgment only "if the record establishes as a matter of law that discrimination played *no* role in its actions," *id.* at 110 n.8 (quoting *Williams*, 872 N.Y.S.2d at 38).

### a. Plaintiff's Race Discrimination Claims

Notwithstanding her blanket assertion that "[r]ace as well as age were the reasons for" her negative treatment at each store as well as the transfers, (*see* Pl.'s Decl. ¶¶ 83, 87), Plaintiff's only evidence offered in support of discrimination based on race relates to the time period between the latter part of 2011 and 2012, when Pleshtiyev became her manager at Platinum, (*see id.* ¶ 88).  Specifically, Plaintiff's declaration as well as the journal entries submitted in support of her declaration attest to a number of racial comments made from approximately February 21, 2012 until April 24, 2012, including Pleshtiyev calling Plaintiff his "slave," stating "all you black people are thieves" in reference to a former African American employee who had allegedly stolen from the store, and commenting, in reference to his transfer to JLS, that all of the sales personnel were "ghetto niggers" and that he would say "yo, what's up nigger" to the JLS customers.  (*Id.* ¶¶ 91, 101–02.)  Plaintiff further declares that Pleshtiyev's last day at Platinum was April 24, 2012—before her employment was terminated.  (*Id.* ¶ 102.)  Plaintiff does not, however, offer any evidence linking Pleshtiyev's race-related statements to the termination of her employment.  Moreover, although Plaintiff seems to argue that her discrimination claims, including those brought under Title VII, should survive summary judgment because Defendants

terminated her employment "but retained employees and replaced her with employees outside of her protected class," (*see* Pl.'s Opp. 17), the evidence shows that at the time her employment was terminated, Defendants terminated all sales associates, including a sales associate who was not African American, (*see* Pl.'s Decl. ¶ 109). *See, e.g.*, *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001) (holding that a court may properly grant summary judgment if no reasonable jury could find that similarly situated employees outside of a plaintiff's protected class were not similarly treated). Therefore, even considering the de minimus burden on Plaintiff to establish a prima facie case, I find that Plaintiff has not provided any evidence from which a reasonable jury could conclude that her termination was motivated by racially discriminatory intent.

Moreover, even if Plaintiff could establish a prima facie case of race-based discrimination, Defendants have offered sufficient evidence of a legitimate, non-discriminatory reason—namely, the financial difficulties the store was facing, including the $280,000 owed to the franchisor, (*see* Pl.'s 56.1 ¶¶ 51–52; Zavilensky Aff. ¶¶ 28–30; Coleman Aff. Ex. R; Luyblinsky Aff. ¶ 7)—and for the reasons noted above, Plaintiff cannot show that this reason was a pretext for race-based discrimination. Defendants' motion for summary judgment as to Plaintiff's non-NYCHRL race discrimination claims is thus granted. Because Title VII and § 1981 do not cover claims of age discrimination, Plaintiff's discrimination claims brought under Title VII and § 1981 are dismissed in their entirety.

However, Plaintiff has offered sufficient evidence to survive summary judgment as to her race-based discrimination claims brought under the NYCHRL, and summary judgment as to these claims is thus denied.

b.  <u>Plaintiff's Age Discrimination Claims</u>

Unlike with respect to Plaintiff's race-based claims, Plaintiff has offered sufficient evidence to support a prima facie case of discrimination on the basis of age.  However, given the financial difficulties faced by the Platinum store, including the amount of money owed by that store to the franchisor, and the eventual return of that store to the franchisor a few months after the termination of Plaintiff's employment, I find that Defendants have offered a legitimate, non-discriminatory reason for Plaintiff's termination.[15]  As such, the burden shifts back to Plaintiff at this stage to show by sufficient evidence that Defendants' proffered reason for the termination of her employment was a pretext and that discrimination was the "but for" reason for her termination.

Certainly, and while contested by opposing affidavits, Plaintiff submits a signed and verified declaration attesting to key facts supporting age-based discrimination, including age-related statements made at Styleyes that she was "too old and slow" and her eventual transfer for that reason after complaining about Roth, (*see* Pl.'s Decl. ¶¶ 21, 62–63); a district manager who asked a customer at Platinum if she wanted a "younger sales person to help her," (*id.* ¶ 96); age-related comments made at JLS, including that she was an "old ant," "old," and should retire, as well as her transfer after complaining about another employee assaulting her, (*id.* ¶¶ 24, 27, 69, 77); and a manager at Platinum making fun of her accent, commenting on her age, calling her "too old," and telling her she should get "old age insurance," (*id.* ¶¶ 90, 93–94, 99–100).[16]

_____

[15] Although Plaintiff argues in her opposition in connection with her retaliation claims that her transfers were adverse employment actions, Plaintiff does not make the same argument with respect to her discrimination claims. (*Compare* Pl.'s Opp. 22 (labeling the transfers "retaliatory" along with the loss of her health insurance), *with id.* 17–20 (focusing on her termination).)

[16] In making my determination, I discount Defendants' position that Plaintiff has not offered any "credible" evidence to support her claims, (*see, e.g.*, Defs.' Mem. 23 (it "is incredulous that Plaintiff would suddenly remember . . . being subjected to racial discrimination"); Zavilensky Aff. ¶ 12 ("There is absolutely no credible evidence that any

Plaintiff further declares that she was told in 2010 that she was being transferred from Platinum because the store was going to close, (*id.* ¶¶ 23, 67), yet she was still transferred back to Platinum later that year after her brief employment at JLS.

However, Plaintiff cannot refute that the Platinum store ultimately closed, does not dispute that all of the sales persons at Platinum were terminated at the same time, and does not offer the age of the other sales associate she admits was terminated.  (*See* Pl.'s Opp. 9; *see also* Pl.'s 56.1 ¶ 52; Zavilensky Aff. ¶ 29; Luyblinsky Aff. ¶ 7; Parker Decl. Ex. 24.)  Indeed, Ms. Luyblinsky attests that she "explained to the entire staff, including Ms. McLeod, that the decision to lay off employees was motivated by economic factors as Platinum was struggling financially." (Luyblinsky Aff. ¶ 7.)  Moreover, Plaintiff does not directly tie any of the age-related statements to the termination of her employment, but rather admits that she had a discussion with the district manager about a potential management position before her employment was terminated—a discussion that suggests Defendants wanted to keep her as an employee.  In fact, notwithstanding Plaintiff's argument that the management offer was "bogus," (Pl.'s Opp. 22–23), and her suggestion that the conversation was meant to continue before her employment was terminated, (*see* Pl.'s Decl. ¶¶ 81, 103–04), Plaintiff does not and cannot dispute that the offer was made, (*see id.* Ex. 14, at 35).  Given the cumulative weight of the evidence, no jury could reasonably conclude that Plaintiff's age was the "but-for" cause of her termination and, therefore, summary judgment as to Plaintiff's age-based discrimination claims under the ADEA and NYSHRL is granted.  *See Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 41

---

of the corporate Defendants unlawfully discriminated."), ¶ 34 ("It is virtually beyond belief that every one of Ms. McLeod's managers and supervisors at each of the stores mistreated her and discriminated against her")), as that determination is better left to a jury.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("But the disparity between the affidavits . . . itself creates a credibility issue that is not readily amenable to resolution on summary judgment. . . . [H]is claim, however valid it may ultimately prove to be, is sufficiently strong to defeat the motion for summary judgment.").  As such, unless otherwise noted, I assume the facts stated by Plaintiff to be accurate.

(2d Cir. 2012) (summary order) ("The remark cannot bear that weight when considered against the overwhelming documentary evidence supporting [defendants'] articulated non-discriminatory reason for terminating [plaintiff]. . . . The same conclusion obtains even when, as we must, we consider the totality of the evidence that [plaintiff] points to as evidence of defendants' age bias."). However, because Plaintiff has offered sufficient evidence to show that she was treated "less well" because of her age, Defendants' motion for summary judgment as to Plaintiff's NYCHRL age-based discrimination claims is denied.

### 2. Plaintiff's Retaliation Claims

Plaintiff's federal and NYSHRL retaliation claims are similarly analyzed under the *McDonnell Douglas* burden-shifting framework. *Gorzynski*, 596 F.3d at 110. To establish a prima facie case of retaliation under this framework, a plaintiff must show "(1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action." *Id.* (citing *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006)). The causal connection can be established "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or . . . (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Like a discrimination claim, if the plaintiff has made a prima facie case, the burden shifts to the defendants to show a legitimate, non-discriminatory reason for the adverse action. *Pena-Barrero v. City of New York*, No. 14-CV-9550 (VEC), 2017 WL 1194477, at *17 (S.D.N.Y. Mar. 30, 2017) (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). If defendants meet that burden, the plaintiff must then offer evidence from which a jury could conclude that the non-discriminatory reasons were pretext for

unlawful retaliation.  *See Witkowich v. U.S. Marshals Serv.*, 424 F. App'x 20, 22 (2d Cir. 2011) (summary order) (citing *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996)).  In doing so, the plaintiff must show that the protected activity "was a but-for cause of the alleged adverse action by the employer."  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 363 (2013) (Title VII); *see also Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 271 n.3 (2d Cir. 2016) ("Because the standards for evaluating retaliation claims are identical under Title VII and the NYSHRL, our analysis does not distinguish between [plaintiff's] federal and state claims." (internal quotation marks omitted)); *Sarkis v. Ollie's Bargain Outlet*, 560 F. App'x 27, 29 n.1 (2d Cir. 2014) (summary order) ("The substantive legal principles for claims under Title VII also apply generally to claims under § 1981 and the NYSHRL.").

In their briefs submitted in support of their motion for summary judgment, Defendants combine their reasons for dismissal of the retaliation claims with their argument as to the hostile work environment claims.  (*See* Defs.' Mem. 22–24; Defs.' Reply 9–11.)[17]  Although not directly tied to the legal framework, Defendants argue simply that they offered legitimate business reasons for the termination of Plaintiff's employment and that "[t]here is no credible evidence supporting Plaintiff's argument that Platinum retaliated against Plaintiff or based an employment action on discriminatory motives."  (Defs.' Mem. 24.)  In response, Plaintiff notes that her numerous transfers and loss of health insurance were also retaliatory,[18] and that with respect to her termination, the same facts in support of a finding of pretext in connection with the discrimination claims apply.  (*See* Pl.'s Opp. 21–23.)  Plaintiff further points out that her

---

[17] "Defs.' Reply" refers to the Reply Brief of Defendants in Further Support of Motion for Summary Judgment. (Doc. 147.)

[18] Because Plaintiff's stated protected conduct—her filing of the NYSDHR complaint—occurred on September 15, 2011, I cannot find that any of the transfers, all of which occurred before the filing of that complaint, were retaliatory.  Nor do I find that the lapse of health insurance coverage for a one-month period—for which Plaintiff admits she suffered no damages, (Pl.'s 56.1 ¶ 47)—is an adverse employment action.

employment was terminated approximately two months after Defendants received the NYSDHR's determination. (*See id.* at 22–23.)

Although the September 15, 2011 filing of Plaintiff's NYSDHR complaint is a protected activity, Plaintiff's only evidence of animus related to the filing of that complaint is the statement of one individual, Pleshtiyev, on March 9, 2012, referring to her "little small claims case." (Pl.'s Decl. ¶ 94.) Plaintiff does not, however, offer any evidence that Pleshtiyev was speaking on behalf of Defendants or that he in any way influenced the decision-making with respect to the termination of her employment. As a result, Plaintiff's only evidence arguably supporting any causal connection is the timing of her termination as related to the NYSDHR submission. However—and while Plaintiff focuses on the NYSDHR's ultimate finding instead of the actual protected activity, (*see* Pl.'s Opp. 22–23)—Plaintiff was terminated approximately eight months after the protected activity, (*see* Pl.'s 56.1 ¶¶ 52, 54). Although the Second Circuit has "not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation," *Gorzynski*, 596 F.3d at 110, I find that with respect to the factual circumstances present here, no reasonable jury could draw an inference of retaliation from the temporal proximity of the protected conduct and the adverse action, *see, e.g.*, *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) ("[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation."). Moreover, even if I found that Plaintiff had successfully established a prima facie case, Defendants have, as noted above, provided a legitimate, non-retaliatory reason for her termination, and any temporal proximity would not suffice to defeat summary judgment at the third *McDonnell Douglas* step. *See Zann Kwan v.*

*Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013) (holding that while a plaintiff may rely on other evidence such as inconsistent employer explanations to defeat summary judgment, "[t]emporal proximity alone is insufficient to defeat summary judgment at the pretext stage"). As a result, Defendants' motion for summary judgment with regard to Plaintiff's federal and NYSHRL retaliation claims is granted.

With respect to Plaintiff's NYCHRL claims, under the NYCHRL, employers are prohibited from "retaliating or discriminating in any manner against any person because such person has . . . opposed any practice forbidden under this chapter." *Mihalik*, 715 F.3d at 112 (quoting N.Y.C. Admin. Code § 8–107(7)). To show retaliation, a plaintiff must thus show that "she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Id.* (citation omitted). As stated above, other than Pleshtiyev's reference to her "little small claims case," Plaintiff has introduced no evidence supporting any employer conduct that can be tied in any way to her NYSDHR complaint. Under the factual circumstances present here, I find that no reasonable jury could conclude that Defendants took any action because of Plaintiff's NYSDHR complaint. Defendants' motion for summary judgment as to Plaintiff's retaliation claims brought under the NYCHRL is thus also granted. *See Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 77 (2d Cir. 2015) (finding plaintiff did not present facts from which a reasonable jury could conclude that advocacy against her reappointment or rejection of her appeal were motivated, in part, by retaliation when issues were expressed before the protected conduct).

### 3. Plaintiff's Hostile Work Environment Claims

To establish a federal or NYSHRL hostile work environment claim, a plaintiff "must

produce enough evidence to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (quoting *Gorzynski*, 596 F.3d at 102). Courts "examine the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance.'" *Id.* (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003)). This test is both subjective and objective. *Id.* Under the more permissive NYCHRL standard, a "plaintiff need only demonstrate by a preponderance of the evidence that he has been treated less well than other employees because of his race." *Leung v. N.Y. Univ.*, 580 F. App'x 38, 40 (2d Cir. 2014) (summary order) (quoting *Mihalik*, 715 F.3d at 110).

Plaintiff's declaration contains numerous examples of times she was called old or subjected to negative treatment, along with the various racial epithets hurled at her by Pleshtiyev, and I find such examples sufficient to create a reasonable issue of fact for the jury with respect to whether Plaintiff was subject to a hostile work environment. *See Rivera*, 743 F.3d at 24 ("We emphasize that 'perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as nigger by a supervisor in the presence of his subordinates.'" (quoting *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 439 (2d Cir. 1999))); *see also Daniel v. T & M Prot. Res., LLC*, No. 15-560-cv, 2017 WL 1476598, at *1 (2d Cir. Apr. 25, 2017) (summary order) (rejecting the district court's decision that the one-time use of a racial slur from a supervisor to a subordinate could not, by itself, support a hostile work environment claim). As a result,

Defendants' motion for summary judgment as to Plaintiff's hostile work environment claims is denied.

### 4. Individual Liability

Defendants further argue that dismissal is warranted as to the Zavilenskys because of the lack of any basis to impose individual liability on those defendants. (*See* Defs.' Mem. 24–29.)

#### a. Title VII and the ADEA

Plaintiff acknowledges that there is generally no basis to impose individual liability under Title VII or the ADEA. (Pl.'s Opp. 13.) *See, e.g.*, *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) (Title VII); *Washington v. Borough of Manhattan Cmty. Coll.*, No. 16 Civ. 6168 (PAE), 2016 WL 7410717, at *2 (S.D.N.Y. Dec. 21, 2016) (ADEA). However, Plaintiff contends that I can still pierce the corporate veil to reach the Zavilenskys as the owners of Platinum, Elegant Eyes, Styleyes, and JLS. (Pl.'s Opp. 10–13.)

New York courts are generally "reluctant to disregard the corporate entity." *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600 (2d Cir. 1989). "New York law establishes two requirements to pierce a corporate veil and to hold an individual liable for corporate action: (1) the person must dominate the corporation, effectively dictating its action; and (2) the person must use that control to abuse the privilege of doing business in the corporate form by perpetrating a wrong or injustice against the plaintiff such that a court in equity will intervene." *Badian v. Elliott*, 165 F. App'x 886, 889 (2d Cir. 2006) (summary order) (citations and internal quotation marks omitted); *see also William Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 138 (2d Cir. 1991) ("The critical question is whether the corporation is a shell being used by the individual shareowners to advance their own purely personal rather than corporate ends." (internal quotation marks omitted)); *Avila-Blum v. Casa de Cambio Delgado,*

*Inc.*, 519 F. Supp. 2d 423, 430 (S.D.N.Y. 2007) ("To establish alter ego liability it is necessary to show that the individual defendant exercised such complete dominion and control that the corporation lacked independent will and that this control was used to commit fraud or wrong against the plaintiffs." (internal quotation marks omitted)). As to the first requirement, personal responsibility and control over a business are insufficient to justify piercing the corporate veil. *See William Wrigley Jr. Co.*, 890 F.2d at 601 n.2 ("That [defendant] oversaw and controlled the renewal business does not mean that the corporate entities were mere alter egos. It merely demonstrates that [defendant] was personally involved in every aspect of the firms' work, not that the corporations were conducting his personal business."); *see also Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 55 (2d Cir. 2012) (finding jury instruction erroneous that suggested that an individual could be an alter ego merely because the individual "serves in a supervisory position and exercises significant control over an employee's hiring, firing or conditions of employment"). In determining whether an individual dominates a corporation, courts consider certain equitable factors:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 386 F. Supp. 2d 461, 464–65 (S.D.N.Y. 2005) (quoting *Wm. Passalacqua Builders, Inc.*, 933 F.2d at 139). "Although a showing of complete domination is 'the key to piercing the corporate veil,' the party seeking to pierce

the corporate veil must also fulfill the second requirement by demonstrating: 1) the existence of a wrongful or unjust act toward that party, and 2) that the act caused that party's harm." *Id.* at 465 (quoting *Morris v. N.Y. State Dep't of Taxation and Fin.*, 603 N.Y.S.2d 807, 811 (1993).

In furtherance of their position that the corporations are separate entities that observe the necessary corporate formalities, Defendants attest that the corporations had separate employees, separate operations, separate books and records, separate payroll and bookkeeping systems, and separate tax returns. (*See* Zavilensky Aff. ¶ 3; *see also* NYSDHR Answer ¶ 2.)[19] Furthermore, the paystubs reflect that each corporation separately paid its employees, (*see* Coleman Aff. Exs. M, N, O, P, Q, S; Pl.'s Decl. Exs. 1, 6, 8, 10), and it appears that at least Platinum separately corresponded with its health insurance, (*see* Coleman Aff. Ex. U). Finally, the Zavilenskys assign district managers to oversee stores within certain geographic areas, and also employ store managers who are responsible for the day-to-day operations of the stores. (NYSDHR Answer ¶ 3.) On the other hand, Plaintiff submits evidence that the Zavilenskys were responsible for hiring decisions and handled various employee complaints or requests, (WZ Dep. 10:2-3; EZ Dep. 87:8-12),[20] that one employee was responsible for issuing paychecks and for bookkeeping activities, (WZ Dep. 23:2-9; Kozodoy Dep. 12:16-13:25),[21] that the Zavilenskys did not maintain a separate office, conducted store meetings as needed, and had monthly meetings with store managers, (WZ Dep. 56:1-57:7; EZ Dep. 9:2-21), and that Elaina Zavilensky's assistant would

---

[19] "NYSDHR Answer" refers to the answer submitted by Defendants in response to Plaintiff's NYSDHR complaint, attached as Exhibit B to the Coleman Aff. (Doc. 122-2.)

[20] "WZ Dep" refers to the January 14, 2016 deposition of Walter Zavilensky, attached as Exhibit 18 to the Parker Decl. (Docs. 143-4, 143-5.) "EZ Dep." refers to the January 14, 2016 deposition of Elaina Zavilensky, attached as Exhibit 19 to the Parker Decl. (Doc. 143-6.)

[21] "Kozodoy Dep." refers to the February 2, 2016 deposition of Sergey Kozodoy, attached as Exhibit 20 to the Parker Decl. (Doc. 143-7.)

maintain the files for each store, receive the requests for frames, and receive the claims forms from each of the stores to handle billing, (Gorodetsky Dep. 46:2-22, 49:14-25, 60:12-62:12).[22] Plaintiff further declares that her employment was not formally terminated from Elegant Eyes, but rather transferred to Styleyes. (Pl.'s Decl. ¶¶ 19–20.) Finally, the employee handbook given to Plaintiff at Platinum states that employees sometimes need to cover other locations within the "Company," but does not define "the Company." (*Id.* Ex. 11.)

Regardless of whether Defendants satisfy the first part of the alter ego analysis, I decline to impose alter ego liability where, as here, there is no evidence supporting the conclusion that any domination was used to perpetrate a fraud on Plaintiff. Plaintiff does not offer any facts supporting a finding that because of any domination or control, her ability to "rectify her situation [was] futile," *see Avila-Blum*, 519 F. Supp. 2d at 430, or that it caused the alleged hostile work environment, let alone any discrimination or injury suffered. As a result, I find that alter ego liability cannot be imposed to find the Zavilenskys individually liable under Plaintiff's claims brought under Title VII or the ADEA.

### b. § 1981, the NYSHRL, and the NYCHRL

Unlike with respect to federal claims brought under Title VII and the ADEA, individuals may be held liable under § 1981 where there is "some affirmative link to causally connect the actor with the discriminatory action." *Yan v. Ziba Mode Inc.*, No. 15-cv-47 (RJS), 2016 WL 1276456, at *2 (S.D.N.Y. Mar. 29, 2016) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000)). Under this standard, there must be some personal involvement on the part of the individual in question. *See Whidbee*, 223 F.3d at 75. Under the NYSHRL, an

---

[22] "Gorodetsky Dep." refers to the January 14, 2016 deposition of Elina Gorodetsky, attached as Exhibit 21 to the Parker Decl. (Doc. 143-8.)

individual may be subject to liability if he has "an ownership interest" or "the authority to hire and fire employees," or if he aided and abetted the unlawful discriminatory acts of others. *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 521–22 (S.D.N.Y. 2015) (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995)). "[A]n individual may be subject to liability if he 'actually participates in the conduct giving rise to a discrimination claim.'" *Yan*, 2016 WL 127456, at *2 (quoting *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)). Finally, the NYCHRL "specifies a broader standard for the imputation of employee conduct to an employer," and liability "can arise in three circumstances": (1) where the individual "exercised managerial or supervisory responsibility"; (2) where the employer knew of the employee's conduct and either acquiesced or failed to take "immediate and appropriate corrective action" and (3) where the employer should have known about the discriminatory conduct and did nothing to prevent it. *Gorman*, 146 F. Supp. 3d at 529 (quoting *Zakrzewska v. New School*, 902 N.Y.S.2d 838, 841 (2010)).

Under these three statutes, I find that Plaintiff has created a triable issue of fact with respect to whether the Zavilenskys were individually liable. *See, e.g.*, *Feingold*, 366 F.3d at 158 (reversing district court's decision to grant summary judgment where there was enough evidence to show that the individuals participated in creating a hostile work environment, other individuals acted adversely because of the plaintiff's race, and still other individuals not only took no action when aware of problematic behavior, but terminated him). In particular, Plaintiff asserts that the Zavilenskys dismissed her complaints of discrimination and harassment, attempted to discredit her by disparaging her among the managers and employees, and ultimately terminated her employment. (Pl.'s Decl. ¶¶ 22, 27, 28, 31–33, 42–44.) As a result, summary judgment as to the Zavilenskys' individual liability for the § 1981, NYSHRL, and NYCHRL claims is denied.

## V.    Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Specifically, Defendants' motion for summary judgment is granted with respect to:  (1) Plaintiff's discrimination claims brought under Title VII, the ADEA, § 1981, and the NYSHRL; (2) Plaintiff's retaliation claims; and (3) Plaintiff's hostile work environment claims against the individual Defendants brought under Title VII and the ADEA. Defendants' motion for summary judgment is denied with respect to:  (1) Plaintiff's discrimination claims brought under the NYCHRL; (2) Plaintiff's hostile work environment claims brought under Title VII, the ADEA, § 1981, the NYSHRL, and the NYCHRL against the corporate Defendants; and (3) Plaintiff's hostile work environment claims brought under § 1981, the NYSHRL, and the NYCHRL against the individual Defendants.  The Clerk of Court is directed to terminate the open motion at Document 115.  A pretrial conference will be held at 4:00 p.m. on August 30, 2018, at which the parties should be prepared to discuss potential trial dates.

SO ORDERED.

Dated:  August 6, 2018
        New York, New York

_Vernon Broderick_

Vernon S. Broderick
United States District Judge